The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 28 July 1998 as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. At the time of the alleged injury giving rise to this claim, Liberty Mutual Insurance Company was the carrier on the risk for workers compensation purposes.
3. All parties have been correctly designated, there is no dispute over misjoinder of parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
4. All applicable Industrial Commission forms, including Forms 18, 19, 33 and 33R, may be received in evidence.
5. Plaintiffs average weekly wage and resulting compensation rate are to be calculated according to the Form 22 wage chart submitted by defendants subsequent to the hearing.
6. In addition to the Industrial Commission forms, the parties stipulated into evidence in this matter stipulated exhibit one, plaintiffs payroll information; stipulated exhibit two, plaintiffs recorded statement; and stipulated exhibit three, plaintiffs medical and employment records. In addition, admitted into evidence were plaintiffs exhibit one, plaintiffs employment application; plaintiffs exhibit two, plaintiffs paystubs; plaintiffs exhibits three through six, pictures of plaintiffs scars; and plaintiffs exhibit seven, a request for information from previous employer. Finally, admitted into evidence were defendants exhibit one, a form from plaintiffs Department of Transportation physical from 9 April 1997; defendants exhibit two, the employee injury report dated 1 August 1997; and defendants exhibit three, a form from plaintiffs Department of Transportation physical from 14 November 1994.
7. The issues to be determined as a result of this hearing are whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendants, and, if so, to what medical and/or indemnity benefits is he entitled. Defendants also contend that an employment relationship between plaintiff and defendants did not exist due to fraud on the part of plaintiff.
8. Following the hearing, the deposition of Dr. Robert B. McBride was taken and received into the evidentiary record.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows
 FINDINGS OF FACT
1. On the date of the hearing before Deputy Commissioner Pfeiffer in this matter, plaintiff was a fifty-seven year-old married man. Plaintiff completed the ninth grade, leaving school to join the U.S. Marine Corps. Plaintiff served in the military for four years, and was honorably discharged in 1962. Since leaving the military, plaintiff has been employed primarily as a truck driver.
2. From 1974 through 1990, plaintiff was employed as a truck driver for Winn-Dixie. In 1988, while working for Winn-Dixie, plaintiff sustained a work-related injury to his back for which he ultimately was paid pursuant to a settlement agreement.
3. From 1990 through 1993, plaintiff was employed as a truck driver for Hucks Piggy Back Service. On 7 August 1992, while working for Hucks Piggy Back Service, plaintiff sustained a work-related injury to his right arm, right shoulder, and back. Plaintiff was treated for these injuries by Dr. McBride, who performed surgery on plaintiffs right shoulder in January 1993. Plaintiff was compensated for this work-related injury, and was last treated by Dr. McBride for this injury on 9 March 1994.
4. On 2 April 1997, plaintiff applied for a position as a local driver for defendants. Plaintiff did not include on his application his previous employment with Hucks Piggy Back Service, but he later added that information on a separate piece of paper that he added to the application. Plaintiff underwent various tests, including a Department of Transportation physical on 4 April 1997, during which the physician examining him inquired about the several scars on plaintiffs body. At this examination, the scar from plaintiffs 1993 surgery was visible, and it is customary practice for a physician examining a patient to inquire as to the nature of surgical or other scars.
5. During the hiring process plaintiff was not asked by defendants about any prior workers compensation injuries, as is appropriate under the Americans with Disabilities Act. Plaintiff did not indicate on his employment application that he had sustained prior workers compensation injuries, which is also appropriate under the Americans with Disabilities Act.
6. Plaintiff was hired by defendants and began his employment as a local truck driver on 14 April 1997. Plaintiffs job as a truck driver for defendants required him to drive and load and unload trucks. This job required heavy lifting.
7. On 26 June 1997, plaintiff was at the Bloomburg Mill in Monroe loading boxes of rolled cloth onto his truck. The boxes were about five to six feet tall, most of which were stacked on top of each other, with each box weighing approximately 300 pounds. By injury report dated 1 August 1997, plaintiff reported to defendants that he injured his right arm and shoulder lifting the boxes "that fork lift drivers drop [sic] on floor onto a hand truck.
8. When working at Bloomburg Mill on 26 June 1997, plaintiff found that some of the boxes were lying flat on the floor on their sides instead of in their normal upright and stacked position. When plaintiff reached down to pick up one of the boxes on the floor to put it on the hand truck, he felt something pull and then he felt pain in his right arm. Plaintiff had to get assistance from another driver to pick up and place the box on the hand truck. Plaintiff thought he had just pulled a muscle, and therefore did not seek medical attention immediately.
9. While boxes at Bloomburg Mill normally are lined and stacked up against a wall, on occasion the boxes are scattered about and are lying on their sides on the floor. Plaintiff had even complained prior to 26 June 1997 about boxes lying on the floor at Bloomburg Mill. Even though the boxes at Bloomburg Mill should not have been lying on the floor on 26 June 1997, this was not the first time and on prior occasions plaintiff and coworkers had found boxes lying end to end on the floor instead of stacked and lined up against the wall. It was part of plaintiffs normal, customary job duties to pick up and load all boxes into his truck, even if the boxes were on the floor.
10. Plaintiff officially reported the injury to his arm to defendants on 1 August 1997. On 1 August 1997 plaintiff was seen by a physician at ProComp, who indicated that plaintiff could work only at light duty until he was seen by an orthopedist.
11. On 7 August 1997, plaintiff was seen by Dr. Thompson, an orthopedic doctor who practices with Dr. McBride, the physician who treated plaintiff for his prior right arm injury. Dr. Thompson ordered an MRI and released plaintiff to left-handed duty only. Plaintiff was terminated by defendants on 15 August 1997 for his failure to report his prior workers compensation injury to his right shoulder.
12. Plaintiff continued to be treated by Drs. Thompson and McBride for a right ruptured biceps tendon, impingement syndrome of the right shoulder, and a tear of the right superior labrum. On 7 November 1997, Dr. McBride performed a tenodesis of the right biceps tendon and arthroscopy of plaintiffs right shoulder and superior labrum.
13. Following the 7 November 1997 surgery, Dr. McBride released plaintiff to return to work without restrictions. Plaintiff returned to work as a truck driver for West Brothers on 2 April 1998, and was working as of the day of the hearing before Deputy Commissioner Pfeiffer.
14. Plaintiffs normal job duties while employed by defendants included heavy lifting of boxes and other material to load and unload his truck. Lifting boxes at Bloomburg Mill to load his truck was part of plaintiffs normal job duties. While boxes at Bloomburg Mill were not supposed to be lying on their sides, it was not an interruption of his normal work routine that plaintiff found boxes at Bloomburg Mill on 26 June 1997 lying on their sides, because it was not unusual for plaintiff to find boxes at this particular mill lying on their sides on the floor.
***********
Based on upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiffs average weekly wage on 26 June 1997 was $652.33, which yields a weekly compensation rate of $434.91. N.C.G.S.97-2(5).
2. Because he was performing his work in his usual and customary manner, and because there was no unlooked for or untoward event, plaintiff has failed to prove by the greater weight of the evidence that he sustained an injury by accident arising out of and in the course of his employment with defendants on 26 June 1997. N.C.G.S. 97-2(6); Trudell v. Seven Lakes Heating AirConditioning Co., 55 N.C. App. 89, 284 S.E.2d 538 (1991).
3. Plaintiffs claim, therefore, is not compensable under the provisions of the North Carolina Workers Compensation Act. N.C.G.S. 97-2(6).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
 ORDER
1. Under the law, plaintiffs claim must be and the same is HEREBY DENIED.
2. No attorneys fees are awarded herein.
3. If he has not already been so compensated, defendants shall pay an expert witness fee in the amount of $400.00 to Dr. Robert D. McBride for his deposition testimony in this matter.
4. Each side shall bear its own costs.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/nwg